This matter is Swiger or Swiger or Swinger, I guess. Swiger, Your Honor. We've been debating that with ourselves. Should I wait? Whenever you're ready. Okay. Good morning. My name is Greg Beck. I represent the plaintiff in this case, Cliff Swiger. And I would like to reserve five minutes of my time for rebuttal, if I may. Okay. Mr. Beck, what is the best case or cases for your position? Well, on a primary point that a partnership with one stateless partner is not stateless itself, the only cases that have been decided on point are from the Second Circuit, and they're the opposite to our position. We acknowledge that. But we believe that Grupo Dataflux, the Supreme Court decision, sets forth the principle that should govern this matter and explains why a partnership should be considered differently for purposes of complete diversity than if the individual partners had been on the other side of the lawsuit. Grupo doesn't hold that. What is the holding in Grupo? Grupo Dataflux, Your Honor, does not hold that. And what Grupo Dataflux is about is it's about how complete diversity works when applied to a partnership. Now, the usual rule in diversity cases is if there's a jurisdictional spoiler, that spoiler can be dismissed even after the initiation of the lawsuit to preserve diversity. When it is a party. When it is a partner. When it is a party, right. Correct. However, Grupo goes to Paines to, and the dissent would go your way, but Grupo goes to Paines to say that's not the situation here. When you have a partnership, you have to look at the partners as of the time of filing. Well, that is a time of filing case. That's not the principle that I'm trying to get out of Grupo Dataflux. What is the principle you're trying to get? The principle I'm trying to get is that when you're looking at a partnership for purposes of diversity jurisdiction, you have to look at the partnership as an entity. And so the question of what the citizenship of the entity is, is not necessarily the same as what the citizenship of each individual party on the other side of the case is. You think Grupo supports that proposition? Well, Grupo Dataflux, it's certainly not the same issue. The question was, do you think Grupo supports that proposition? No. Which proposition, John? I'm sorry. The one that you just mentioned about for purposes of diversity, how you determine the citizenship of the partnership. In effect, you said you ignore the citizenship of the partners. No, I don't think that you should ignore the citizenship of the partners, and I don't think Grupo Dataflux says that or supports that proposition. The point is that you have to consider the citizenship of the partners. And one analogy we try and draw to this to explain why you look at an entity different from individuals is that an entity, like a corporation, can also have multiple citizenships for diversity purposes. But if one of those citizenships falls through a statutory gap, like the statutory gap in this case, that doesn't mean you throw out the citizenship of the whole entity. You consider the citizenships of the entity that can be determined. In other words, if an entity is a citizen of multiple states and no state, then the entity is only a citizen of those states. But don't we have case law, authoritative case law, I mean, Newman, Green, and others, that dictate here that we look at each of the partners, and if there is a stateless partner, then that ousts the jurisdiction? Well, the case, no, Your Honor, the cases don't hold that a stateless partner ousts jurisdiction. That was not an issue before the court in Grupo Dataflux or Carden. There was no stateless partner involved. Those were all partners that had citizenships that could be determined. So the difference, yeah. I'm just reading a different case from you, then. Okay, I don't think there were stateless partners in Grupo Dataflux. In Newman, Green, there was a stateless partner. The problem in this case is that Bettison, although a United States citizen, has no domicile in any state, he is therefore stateless for purposes of 1332A3. Right. Now, Newman, Green, Your Honor, was an individual. Here, Bettison's stateless status destroyed complete diversity under 1332A3, and his United States citizenship destroyed complete diversity under A2. What am I missing? Your Honor, that case was about an individual who was stateless for diversity purposes, not a partnership that included just one stateless member. But is it not the law that we have to look at the citizenship of each partner? The citizenship of each partner. And as Grupo Dataflux says, a partnership is a citizen of each state in which it has a partner. And the stateless partner is not in a state. The stateless partner does not convey any additional citizenship to the partnership as a whole, that much we concede. But the fact that one party is stateless and would destroy complete diversity if it had been sued as an individual does not mean that the partnership has to adopt that statelessness. And that's why we look to the court. Okay, what case supports that proposition that you just said? Well, again, the only court that directly addresses this is the Second Circuit. And they come out the other way. They come out the other way with very little analysis, Your Honor. I understand why this is sort of an attempting logical progression in that you say a stateless partner is not diverse, a stateless person is not diverse, and a partnership has a stateless person. Therefore, the partnership has to be not diverse. That's the syllogism that leads you down that path. But the reason that I say Grupo Dataflux and Carden to a lesser extent is because those cases both involve situations where diversity comes out differently because the partnership is an entity. And Grupo Dataflux, in that case, it says that normally you could dismiss jurisdictional spoilers because those are individual parties and you can save jurisdiction. But when it comes to a partnership, you can't do that because you're not talking about individual parties that can be dismissed. So even if jurisdiction could be saved in an individual defendant case, it cannot be saved in a partnership case because you have to look at the jurisdiction differently. And Justice Scalia stressed that the partnership must be considered as an entity with its own jurisdiction, its own citizenship for jurisdictional purposes, and not as just an agglomeration of partners. Could I have you move to the issue of dual citizenship? Right. The great weight of the case law, when there is dual citizenship, at least here in the circuits, although we haven't assigned this issue, says that even if you have dual citizenship, if you have American citizenship, that controls for purposes of diversity. But doesn't that, I mean, I would think that's your stronger argument in terms of jurisdiction here, is that he has British citizenship under the literal reading of the Diversity 1332. Shouldn't that be enough? Well, Your Honor, I agree that that's a strong argument, but I have to draw the Court's attention to a recent decision, Fred Smith v. Vanderpool, in which this Court in January did address this issue for the first time. The result... Did you submit a 28-J letter? No, I didn't. The case does not support our position. Actually, and I just became aware of it, but what that Court holds, it's addressing a similar situation to some of the other cases that are addressed in the briefs, which is a situation... Could you give us the citation? Yes. It's 511 F. 3rd 396. And the name again? Fred Smith v. Vanderpool. And this is a case where you have a foreign citizen who becomes a naturalized citizen of the United States. And cases in those circumstances tend to hold, for fairness reasons, that it's simply not fair for that kind of citizen to invoke diversity jurisdiction to get an advantage that similarly situated people would not get. And the Court in Fred Smith relied on Corey, which is the Fifth Circuit decision, primarily, where the Court was concerned about an advantage given to dual citizens that would not otherwise be available by native-born Americans. Well, here the person is a U.S. citizen. It just doesn't solve the problem. Right. Yeah, and I think my point is that the fairness considerations simply don't apply under these circumstances because here you have someone who apparently lives in London, is a citizen of the U.K., apparently is a citizen of the U.K. There's no unfairness in holding him to that for jurisdictional purposes. And unless there's a really good reason to disregard the plain language of the statute, I don't think that the Court should. Now, admittedly, there's a bit... So what you're saying is that Fred Smith doesn't control our case in terms of the American citizen involved here, who resides in London? I think that's right, Your Honor. And that's a point we made in the briefs to distinguish Corey and the similar cases, that if you're dealing with a naturalized United States citizen, that's a very different situation than when a United States citizen acquires jurisdiction elsewhere. So it could be contrived to acquire the citizenship here so as to destroy diversity. Right. And many times courts are concerned that this citizenship is not easy to determine. For example, it could be based on parentage. Someone whose parents or grandparents are Japanese, for example, may end up being a Japanese citizen, but that's just not obvious to anyone, and to give that party the advantage of that citizenship is considered to be not fair. Now, whether fairness is a good enough reason to disregard the plain language of the statute, I don't know, but it seems the Court's going in that direction. But just because... Okay, go ahead. I was going to say, but it also means that someone who has done that is disabled from coming in to being a plaintiff in federal court as well. So it's not necessarily, you know, an advantage to acquire the U.S. citizenship. That's why I think courts usually... The courts so far have applied it in cases where the party is trying to use it to their advantage. For example, to get a case dismissed when they otherwise shouldn't have been able to or to acquire jurisdiction where they otherwise wouldn't have been able to. And those are the situations that have been applied so far. I see my time's up.  Thank you. You did your rebuttal, I think. Yes, I saved some. Okay. Thank you. Your Honors, may it please the Court, my name is Therese Hachon with Morgan, Lewis & Bacchius. We represent the appellee, Morgan, Lewis & Bacchius. So you're here pro se, huh? If only pro se's could bill at the kind of hours you folks are doing. As an initial matter, Your Honors, I would like to address the second issue that Mr. Swider has raised on appeal, which is the relevance of Fred Smith v. Vanderpool to this case. It was a recent Third Circuit case. The opinion was issued by Judge Smith in January of this year. We believe that Fred Smith, Your Honors, is controlling in this particular case. Counsel made some certain arguments. Is it presidential? It is presidential in this particular case. And you were aware of this case. Did anybody send a 28-J letter? Your Honors, we did not submit a 28-J letter. We recently learned of this case in the course of preparing for oral argument, and we would be happy to provide further briefing. How recent is recent? Because with faxes and things like that, unless it was a second ago, you could have easily gotten this to us. The opinion was issued in January of 2008. When did you first learn of it? Sometime last week in the course of preparing. We were around. Okay. I was around. We were always around. Well, we did plan on making it the forefront of our argument today. All the more reason you should have given us a little bit of warning. Because we probably did our research 10 days ago. You said it's a presidential in this case. It is presidential, not an NPO. I'm assuming from the Fed to its side. Excuse me, Your Honors? It is a published presidential opinion. That is correct. It is a published presidential opinion at 511F3396. Okay. In that case, Your Honor, the Third Circuit Court of Appeals held that for purposes of diversity jurisdiction, only the American nationality of a dual national is recognized. In that particular case, Fred Smith was a U.S. citizen, and the court held that her initial reliance on alienage jurisdiction was in error. The court fundamentally held that as a U.S. citizen who also held citizenship of the British Virgin Islands, she was not a citizen or subject of a foreign state under a diversity statute. It was different because it's not a partnership case, right? That's correct, Your Honor. It was not a partnership case. And the reason given was because, as your opponent argued, it would be sort of unfair, right? An individual like that, you know, being a plaintiff. Well, one of the reasons, Your Honor, Your Honor is correct. The Court of Appeals sided to the Fifth Circuit Court of Appeals decision, which is a decision that we relied on in our brief. The Corrie case. Yes, stating that one of the major purposes of alienage jurisdiction is to allow foreign citizens or subjects of a foreign state to have their disputes heard in federal court so as not to affront a sovereign. In this particular case, Chuck Lubar, Charles Lubar, who is the quote-unquote stateless partner, he's a citizen of the United States. It's very unlikely that the United Kingdom would be affronted if his dispute or a dispute involving him would be heard in state court rather than in federal court in the United States. And if we look at, I had a law professor all the time who was always talking about how the law goes mad when the reason for the rule is totally divorced from the rule and you apply the rule without reason. And isn't that what is happening here if we focus on this concept of how you determine the citizenship of a partnership and use that for purposes of diversity, jurisdiction, and whether or not there's complete diversity? Doesn't the reason for the rule of diversity, jurisdiction, totally go out the window when it's applied in this sense? Why should we take the rule that we normally have for how you determine the citizenship of a partnership and apply it in the context of diversity citizenship when one of the partners out of, gosh, who knows how many partners Gordon Willis and Bacchus have? Some 400. Yeah. One of them, just one of them, is a U.S. citizen residing not in a state which is non-diverse from the plaintiff, but resides outside the territorial U.S. in another country. Does that make any sense at all to apply 1332 in that context the way you want us to? Well, Your Honor, there's two basic answers to that question. The first is that... The yes or no. There's two basic answers. Somebody can pick from one of those two. Could you rephrase the yes or no? All right. Does it make any sense at all in this context to apply the rule we usually apply in terms of not allowing diversity in jurisdiction where there's not total diversity? That's a very condensed version of the question. Yes, Your Honor. It does make sense in this particular context for two fundamental reasons. The first is that it's the law. As counsel recognizes... Well, that's why we're here. We're not sure if it's the law or not. It is the law, and I'd be happy to explicate. What case or statute says that for purposes of diversity jurisdiction when you have a partnership whose member, that includes one person who is a citizen of a state that is domiciled outside the United States, that that partnership is not able to get diversity in this context? What case says that? It is an issue of first impression, Your Honor, in the Third Circuit Court of Appeals, but there have been several other federal courts that have addressed this issue, and every federal court that has addressed this issue has come to the same conclusion as Judge Joyner did. Well, the Second Circuit did it, as your colleague suggested, with little or no analysis. I believe, Your Honor, that that is not an accurate characterization of the cases. The Second Circuit Court of Appeals inherit Company v. SCS Communications, Incorporated, one similar analysis to what we set forth in our brief. Well, they get into a very complicated shifting of burdens and burden of proof analysis. Right, which is not applicable in this particular case. Right, and then there's a paragraph in the opinion which does pertain to our situation. Right. Don't the combination of Cardin v. Chapman, I mean Cardin and Chapman, the Cardin case in the Supreme Court and the Chapman case in the Supreme Court, when you put them together, I mean, here we go, I'm saying it's baseball season, I'm throwing it over the middle of the plate here, but don't the two of them taken together support your proposition, your position? That's correct, Your Honor. The Supreme Court's holding in Cardin as well as Chapman, which was based on a previous ruling in Chapman, as well as the Supreme Court's holding in Newman-Green that a U.S. citizen domiciled abroad is not an appropriate subject of diversity jurisdiction. But in Cardin, from the very beginning, you had non-diversity on both sides of the equation. You had a person who was a party who was non-diverse. So it's the same in the other case where you have Texas folks on both sides in the first one that we talked about. In Groupo Dataflex, Your Honor? Right, where there's a Texas resident on both sides, both on the plaintiff's side and the defense side at the time of filing. Right. We don't really have that here. We have a situation where if you just look at the persons who are residing in the U.S., there is total diversity. Right. If you look at the one person who was domiciled abroad, in the traditional sense that we talk about it, there is not total diversity. But if we conclude that this jurisdiction against this diversity jurisdiction, we don't do violence to the rule for diversity jurisdiction, which basically is to afford a federal forum in a context where there might be bias in a state court. And that is the reason, from what I understand it, that you allow diversity jurisdiction. And if the person isn't domiciled anywhere within the U.S., why shouldn't we just say that in situations like this where you have a partnership, where everybody who is domiciled within the U.S. is non-diverse from the plaintiff, we will not look to the one person out of hundreds who is domiciled abroad, because by not looking to that person, we are not doing any damage whatsoever to the purpose of diversity jurisdiction. In fact, we are furthering the purpose of diversity jurisdiction by allowing this plaintiff to have his day in federal court. What is wrong with that analysis? There are three things that are wrong with that analysis. I saw it for one. The first problem with that analysis, Your Honor, is that it's contrary to the Supreme Court's rule in Cardin. Your Honor is correct that in Cardin, the Supreme Court was not faced with the partnership that involved a quote-unquote stateless partner. At issue in Cardin was whether the Supreme Court was required to look at all of the partners in that partnership. That is, whether the limited partners who are not active in the control or the management of the partnership, whether their citizenship could simply be disregarded and whether the court was permitted to look only to the general partners of that particular partnership. The court held in that case that the court was bound to look at every single member of the partnership, be they limited partners or general partners. But that would only help you if you had a situation where one of the limited partners was domiciled abroad. That's correct. Then it would help you, but in this context, you don't have that. That gets to my second point, Your Honor. Before I proceed further, I just wanted to bring to the court's attention a recent case. It is not binding, but it is persuasive. The case of Thompson v. Deloitte & Touche. It was decided in the Southern District of Iowa, like the courts in the South. Does Iowa have a Southern District? Apparently so. Every time you say Southern District, we assume we know what's going on. I think Iowa has three districts, doesn't it? Does it really? No, Your Honor. The Chief Judge in that case, Chief Judge Pratt, reached the same conclusion as did the Second Circuit Court of Appeals, as did Judge Joyner, putting together When did you come across that Iowa case? At about the same time as the other cases. You were too busy to let us know what you were doing. Let me get back to the question Judge McKee asked. All these questions he's asking are really the same. First of all, like Cardin, the limited partnership was a plaintiff. And this Third Circuit case, what's the name of it? Fred Smith. It also involves a plaintiff with a dual citizenship. And here, as my colleagues say, we're talking about a defendant. And this is what Fred Smith says now. The dual citizenship should not be allowed to invoke alien age, to invoke alien age jurisdiction, because this would give him an advantage not enjoyed by the native-born American citizen. Well, here, you're not invoking the citizenship. It's the other side that's invoking it. And you're using it defensively to get out of the jurisdiction. Now, isn't that a different kind of case? In other words, the diversity statute does treat citizenship differently in purposes of whether a person is a plaintiff or a defendant. Lots of times one side can bring it in, but the other side can't. So isn't it a difference in this case because we're talking about a defendant? And again, you know, Cardin doesn't involve a defendant either. Your Honor, we would submit that that is a distinction upon which the Third Circuit Court of Appeals did not rely. The same principle articulated in Fred Smith by the Third Circuit Court of Appeals has also been espoused by other courts of appeals. But that's what Fred Smith says, should not be allowed to invoke alien age jurisdiction. Right? Right on page 400. And here, of course, Morgan Lewis is not invoking it. They're kind of in the sense that they're a plaintiff. They're using it defensively. I think that it still goes both ways, Your Honor. You know, the last sentence of the opinion says that Smith is a United States citizen and therefore she may not utilize her foreign nationality while living abroad for the jurisdictional purposes of 1332A2. I mean, we're in sort of the awkward position here. We're not the ones who filed this lawsuit. However, plaintiff has failed to meet his burden of demonstrating that there's federal subject matter jurisdiction in this case. But technically we have a situation where he is a citizen of a foreign country. So under the statute, as it's written, he is a citizen of a foreign country. So there should be diversity. But we've kind of tweaked it for fairness purposes. We've tweaked the language. Now, why wouldn't we do the same vis-a-vis the first issue as to whether he is a citizen of a state? I mean, why can we do it on the one hand and yet on the other hand the provision is it's the law? Isn't there some common sense, as Judge McKee was saying? Isn't there some looking behind the situation here to say, wait a minute, you know, we did it on the one hand. We have to step back and look at the overall situation here. And this creates an absurd result, and we're not going to read the statute to do that. I think that my response to that question, Your Honor, is that the jurisprudence that's been articulated by the Supreme Court for the last 200 years, with regard to the diversity statute, those rules that are well established and that counsel does not dispute, those are technical, precedential rules. For example, the very rule in Carden that a partnership is deemed to be a citizen of every state in which it has partners who are domiciled, that rule itself is technical, and it will restrict the ability of certain plaintiffs to bring suits against partners. But let me look at the second issue, which is citizenship. And if we have here a citizen of a foreign country, what gives all the courts, and perhaps including us, the right or the ability to say, oh, but you know what? He's also a citizen of America, of the United States. So we won't really look to the fact that he is a citizen of the other country. What Supreme Court case supports our looking the other way, if you will, when there's dual citizenship? The Supreme Court, Your Honor, and Newman Green even addressed this particular issue, although if there was not, I will concede extensive discussion on that particular subject. In that particular case, Feddesen, as you all know, was a U.S. citizen domiciled in Venezuela. The court held that Section 1332A2, alienage jurisdiction, would not be satisfied because Feddesen was a U.S. citizen. That was first articulated by the Supreme Court. But only a U.S. citizen. Excuse me? He was only a U.S. citizen. He wasn't a citizen of Venezuela. In that particular case, he was not, I believe, a citizen of Venezuela. U.S. citizen Feddesen, U.S. citizen domiciled in Venezuela. Right, Your Honor is correct. In that particular case. So that really doesn't work. We have someone here who fits within the exact provision where there should be diversity of jurisdiction because he's a citizen of a foreign country. How do we, what Supreme Court case says that, you know, we really don't, that doesn't count if he has other citizenship. Because he's a U.S. citizen, he can't use U.S. courts. That's basically where you would want us to go. You mean the proposition that for purposes of a dual national and looking at the diversity statute, it's the American citizenship that controls. Well, as we explained earlier, we believe that Fred Smith controls. And I don't think that the distinction made in Fred Smith. I'm sorry? I say we should embank it. And even without Fred Smith, if you look at our briefs, we cite two numerous cases from other courts of appeals for which this proposition is held. To me, that was a little bit amazing. I mean, and I think that the reasoning underlying those courts' opinion is that the purposes of alienage jurisdiction are not as much of an issue. If, for example, the stateless partner is also a citizen of the United States. But the statute doesn't say, but if, in addition to being a citizen of foreign countries, also a citizen of the United States, and this doesn't apply. Well, I think we have to balance the literal words of 1332A with the jurisprudence that's been developed, you know, developed by the Supreme Court. But now you're talking logic. If you're going to rely on logic, you're going to lose. I think I'm lying about the 1332A. You've got to rely upon rules, not logic. If, for example, you wanted to be a citizen of a state, capital S, you have to be a citizen of the United States as well as domiciled in one of the states of the United States. You know, our courts have elaborated on what the concept of domicile is and what it requires. That's not set forth in the statute. But similarly to the complaint that if the partnership piece is going to be fixed, Congress should fix it. Right. I would query why on the concept of dual citizenship, if the provision having to do with citizenship of a foreign state is going to be changed with an exception. For dual citizens, should we not let Congress do that? Congress say accept that. Well, I think in both cases we should allow Congress to make whatever changes it wants to make to the diversity statute. And this would be a change to eliminate it if that citizen of the foreign country is also a citizen of the United States. That's correct, Your Honor. But in this particular case, for both issues, we have well-established authoritative case law. I don't think that Mr. Swagger has any case law for his argument as to the second point, that a U.S. citizen who is also a dual citizen of another country becomes a citizen or subject of a foreign state. And I would submit, Your Honor, Congress has seen fit to revise the diversity statute on several occasions. In 2005, as part of CAFA, Congress specifically provided that with regard to partnerships that were involved in class action litigation, they would be considered to be citizens of the states in which they were formed and of the states in which they conducted business. That's not an exact quote, but that was basically what Congress provided in 2005. So if they didn't like the existing case law on dual citizenship, they could have changed it? Exactly. Congress has also amended the diversity statute to provide that citizens of the District of Columbia, of Puerto Rico, of the territories of the United States would be considered citizens of the capital S states under the diversity statute. Prior to Congress making that particular amendment, those individuals were considered stateless, and there was a mix of jurisprudence all over. If you're right, the bigger the entity, the partnership entity becomes, and arguably the more appropriate it would then be to have subject matter jurisdiction, a diversity jurisdiction, and a lawsuit against such an entity. But the bigger the entity becomes, the less likelihood that that entity can be subjected to the federal courts, at least on diversity jurisdiction. Right. I mean, that's a result of the technical rule. Actually, Morgan Lewis and Bacchius, really, as long as Mr. Gubar resides in England, is beyond the jurisdiction of any federal court in terms of diversity jurisdiction. It can't be sued in any federal court in the United States. Because of the presence of that stateless partner. And can't bring suit either. That's correct. The rule works both ways. I don't think that if you look at 1332a, there's a distinction made between when the party is a plaintiff versus a defendant. It's very general. You know, the Supreme Court in Carter, Your Honors, recognized that the rule it was setting forth was technical, precedent-bound, and unresponsive to policy considerations. It recognized that. However, because of our system of federalism, federal courts are courts of limited jurisdiction. And the Supreme Court has explicitly instructed us that issues of these unincorporated associations, which of the members are considered to be citizens, how we do that calculus. The Supreme Court has guided us and explicitly requested or explicitly set forth the fact that that is a matter that's more readily resolved by legislative prescription. That is an issue for Congress. I just don't see that as being that applicable here at all. Whether or not you look at all partners or just generals and exclude limited. To me, that's a very different kind of consideration than whether or not the entity, however you define the entity, all partners versus just general partners. Whether or not that entity can be subjected to diversity of jurisdiction when everybody in that partnership is either non-diverse from a plaintiff or neutral insofar as the plaintiff is concerned. And that the person doesn't resolve in any state. To me, that's just a different. I understand what you're arguing. I understand. And, you know, in response to that, Your Honor, I'd just like to point out one particular thing, which is not illustrative of the facts in this case. But in this particular case, there is, you know, we're relying on one quote-unquote stateless partner. And we happen to have 400 some-odd other partners who do have state citizenship. But what if in the future there was a partnership that had 99 quote-unquote stateless partners and only two partners who were domiciled in state within the United States? I think that corporately- Well, I know. I thought about the way you draw the line. That's a- Yeah. It's corporately hard for us to simply disregard the 99. But adopting the rule that Mr. Zweig or spouses in this case would require that. How would we draw the line? Where would we draw the limit? The rules set forth by the Supreme Court regarding the application of the diversity statute to different facts and scenarios that have arisen across the history of time, those are technical rules. They leave some people out of federal court. But state courts are the courts that are in general jurisdiction. Let me ask you a question. If we don't find that this one partner passes the test, there are others. Don't we have another situation where we should remand this if we're not convinced that as the dual citizenship aspect? Tell me, is this the end in terms of this one particular partner? Or are there others that you would have in case you go back to the district court? Well, to be honest, I don't know the exact answer to that question. When we did bring our motion, we did rely on three other partners. So there were four at the time. And as your honors well know, complete diversity is determined at the time the complaint was filed. I think whether or not we would renew our efforts with regard to this case if the court found that Mr. Lubar was not sufficiently stateless is one that we would have to revisit if the court made that conclusion. My inclination is probably to say no on that, however. No, in which part of it? No, that we would probably not revisit the issue with regard to the citizenship or the non-citizenship of the other three partners. All right, if you could let us know your position with respect to that. Because we have to dispose of a case. We have to do something with it. And depending, it would mean remand or not or whatever. I mean, we obviously haven't conferenced the case, don't know what we're doing.  We still don't know what we're doing. Let me also add, Ms. Young, you're way over your time. We should have you in more than 15 minutes. And I'll certainly let Mr. Beck go more than his two minutes that he reserved. Okay. Have I addressed all of the questions? Okay. Thank you. Great, thanks. Thank you. Mr. Beck, you have the awkward and somewhat embarrassing position of insisting that we apply common sense here. Yes, and, Your Honor, I don't dispute that Carden is a technical rule and precedent-bound rule. My point is that Carden simply does not control this case. And the easy reason why is because Carden didn't involve any stateless partners. That's the simplest way. And Carden simply did not consider this question, and the Supreme Court and the Third Circuit never have considered this question. But Carden does set forth a general rule, right? Yes. And the general rule is that the citizenship of a partnership is determined by the citizenship of its partners. Right. And you have to look to the citizenship of each partner. I mean, that's the general rule of Carden that we can't ignore. If we want to follow the plain language of the Carden-Grupo-Dataflex rule and just apply it without common sense, then we would say that we're going to apply the plain language. We'll start with Carden and then we'll go to Grupo-Dataflex, okay? In Carden, if you're going to apply that rule without any common sense, just to apply it, you would say that the partnership takes on the citizenship of each of its partners. So if a partner has no citizenship, it does not take on that citizenship. So you want it to be a judicial activist and legislate from the bench. It's not legislating from the bench. I mean, why is it common sense? Well, I don't know. That's definitely legislation. When there's a gap in a statute or in a rule, the job of the courts is to fill that gap, and there's actually no choice. Holding that there's no jurisdiction here isn't deferring to the will of Congress anymore. What is the gap? We have one general rule that's pretty much etched in stone, certainly beginning with at least Carden and going back to Grupo, probably, that to determine the citizenship of a partnership, you look at all of the partners and where they're domiciled, all the partners. Now, granted, Carden was different. That was between general and limited partners, but the general rule that comes out of that, and it's beyond the holding, but if you can extrapolate that holding to our context, you look at all the partners of a partnership to determine the citizenship of the legal entity, the fiction that is the separate thing, the partnership. Applying that rule here, given the wording of the diversity statute, you would say, well, if we want to find out the partnership, the citizenship of Morgan, Lewis, and Bacchius vis-a-vis Carden and Grupo, we have to look at all of the partners and make certain that there is complete diversity. If we then go further beyond that, and this is where it gets a little bit sticky in the common sense, kind of forget about that for a second, but at least applying the rule, if we look at all the partners to find complete diversity, we find that one of the partners here, at least one for now, is non-diverse from the point of, and therefore, the partnership subject matter jurisdiction failed. In fact, I have trouble even as I pronounce that rule, and I think that's the rule. It doesn't make a lot of sense because the non-diversity here is not the non-diversity contemplated in Grupo or Carden or any situation where you've got a resident of one state on one side of the equation and a resident of another state on the other side of the equation, therefore, no diversity. That's not what we have here, and you're saying because we don't have that specific situation, we ought not to apply the rule that has arisen in that situation, but it would sure help if there was some case out there. My law clerk and I have this debate all the time that she wants me to use common sense, and I like to rely upon precedent case law. It would help me, Your Honor, if there's a case out there, too, but there's only the Second Circuit. There's one court that has decided the issue, one court of appeals. It's the Second Circuit and the Third Circuit. Fairly incomprehensible opinion. I think the reason why it doesn't make sense to you that you can apply the Carden rule to a stateless partner is because, and this is kind of what I'm trying to get at here, statelessness is not a citizenship. A statelessness is not a thing so much as a gap in the statute. The only reason statelessness exists is because the courts have held that a citizen of the United States residing abroad is not a citizen of a state and so doesn't fall under A1 of the statute, is not a citizen or subject of a foreign state and so doesn't fall under A2. So therefore, you can't figure out what the citizenship is. Now, look at a comparable context where the same problem has occurred. In corporations, the statute, not just judicial rule, but statute provides two bases for jurisdiction, and one of them is the place of business. And courts have run into the situation where you cannot determine the principal place of business. It just falls through the statute, just like this case, where there's more than one basis of citizenship, but one of them just doesn't fit the statutory terms. And in those cases, the courts do not say, well, because one basis of citizenship is gone, you have to throw out the whole citizenship. Instead, they look at what can be determined. And that's why I say statelessness is not a citizenship. Statelessness is a gap in the statute, and it doesn't mean that you can't determine the citizenship of the entity itself, which takes on citizenships of partners. Well, but with corporations, maybe you can't find the principal, but there are a lot of contenders for which is the principal place of business. Here, if someone isn't in the United States at all, there's just no argument that New York or New Jersey or Florida is their place of business. I mean, it's a little bit different. Right, it's a pure gap. But it's a pure gap in a situation where a corporation has no place of business. In other words, it's simply out of business, or it never has been in business. But you can always get jurisdiction, because it's incorporated somewhere. Right, and so you go to the one citizenship that you can determine, which is the state of incorporation. Was cert sought in any of the dual citizenship cases? Do you know? Your Honor, I honestly can't answer that. I see my time has expired. Thank you. Thank you. No, thank you. Very, very interesting case, very difficult case. I think you both have a very helpful argument and briefing.